IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Elkins

**WILLIAM E. SCOTT, JR.,**

Plaintiff,

v.  Civil Action No. 2:19-CV-50
    Judge Bailey

**CARTER ROAG COAL CO.,**

Defendant.

## ORDER GRANTING MOTION TO DISMISS

Pending before this Court is Defendant's Motion to Dismiss [Doc. 9]. The Motion has been fully briefed and is ripe for decision. On December 16, 2019, the plaintiff, acting *pro se*, filed a handwritten complaint with this Court consisting of a style and attaching a copy of a letter dated September 25, 2019, to "Maria," as well as an excerpt from FindLaw, an excerpt from the Carter Roag Employee Handbook, and the EEOC Form 161, Dismissal and Notice of Rights which states: "Based upon its Investigation, the EEOC Is unable to conclude that the Information obtained establishes violations of the statutes. This does not certify that the respondent Is In compliance with the statutes. No finding is made as to any other Issues that might be construed as having been raised by this charge."

The defendant seeks dismissal of this action on two separate bases. First, defendant argues that the charge was not timely filed with the EEOC and is time barred. Second, the defendant argues that the actions taken by Carter Roag Coal are, as a matter of law, an adequate response to the plaintiff's complaints.

1

Plaintiff is an employee of Carter Roag at its Morgan Camp Mine in Randolph County, West Virginia. He is a Seventh-Day Adventist. On the Saturdays of April 14 and 20, 2018, he was absent from work, ostensibly due to his religion. Carter Roag charged him with a personal day for those absences. On April 19, 2019, Plaintiff filed a charge with the EEOC claiming discrimination and failure to accommodate on those facts. On September 17, 2019, the EEOC issued its Dismissal and Notice of Rights, finding that it was unable to conclude that Carter Roag violated Title VII. Plaintiff subsequently filed his pro se "Complaint" in this civil action, which consists of a letter to the EEOC dated September 25, 2019, and attachments thereto.

Pursuant to Title VII:

(1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of

such charge shall be filed by the Commission with the State or local agency.

42 U.S.C. § 2000e-5(e)(1).

The United States Supreme Court has held that these time periods operate, essentially, as a form of statute of limitations. *See Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("We conclude that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period – 180 or 300 days – set forth in 42 U.S.C. § 2000e-5(e)(1)."). In other words, if a plaintiff did not timely file his charge with the EEOC, then his subsequent civil suit is time-barred as well. Here, because Plaintiff did not initially institute an action alleging religious discrimination in a State or local agency, such as the West Virginia Human Rights Commission, he is subject to the 180-day limitation period. See 42 U.S.C. § 2000e-5(e)(1).

Here, the "unlawful practice" alleged by Plaintiff in his EEOC charge was Carter Roag's treatment of his absences on April 14 and 20, 2018. Plaintiff did not, however, file his EEOC charge until April 1, 2019, which is well more than 180 days, or even 300 days, after his claim accrued.

In his response, the plaintiff argues that he was in contact with the EEOC and filed his complaint with the EEOC on April 29, 2018. Yet the documentation supplied with the plaintiff's response to the Motion shows a verification of email addresses. Unortunately for plaintiff, this correspondence is not a charge.

Title VII is quite specific that "a charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . .." 42 U.S.C. § 2000e-5(e)(1) (emphasis added). E-mail correspondence verifying contact confirmation is not a "charge." A "charge" must be made "in writing under oath or

3

affirmation." 42 U.S.C. § 2000e-5(b). It should contain, among other things, 1) the full name, address, and telephone number of the person making the charge; 2) the full name and address of the person against whom the charge is made; 3) a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices; 4) if known, the approximate number of employees of the prospective defendant employer or members of the prospective defendant labor organization; and 5) a statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency. 29 C.F.R. § 1626.8; *see also* **Williams v. N.C. Admin. Office of the Courts**, 364 F.Supp.3d 596, 602 (E.D. N.C. 2018) (finding an EEOC intake questionnaire was not a "charge" when it did not contain the information specified by regulation). The only document on record which even approaches meeting the regulatory requirements to constitute a "charge" is plaintiff's April 1, 2019 "Charge of Discrimination."

That charge, concerning alleged actions occurring in April 2018, was not filed until April 1, 2019 – almost one year later, and well outside the 180-day or even 300-day limitation. Accordingly, this case will be dismissed.

Even if the charge were filed timely, this Court would be compelled to dismiss this case for failure to state a claim upon which relief may be granted.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations to state a plausible claim for relief.

4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As the Fourth Circuit has explained:

> The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." It requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, i.e., the "plausibility of entitlement to relief."

*Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

The Supreme Court of the United States has explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although courts must accept a complaint's factual allegations as true, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not receive the same treatment. *Iqbal*, 556 U.S. at 663. "Thus, a complaint may be dismissed when the facts alleged clearly demonstrate that the plaintiff has not stated a claim and is not entitled to relief." *Garrett v. Aegis Cmty. Grp., LLC*, 2014 WL 3572046, at *2 (N.D. W.Va. July 21, 2014) (citations omitted).

Although courts are to liberally construe pro se complaints, those pleadings are not excused from compliance with the heightened pleading standard of *Iqbal* and *Twombly*. *Brown v. Miller*, 2016 WL 406373, at *3 (N.D. W.Va. Feb. 2, 2016) (Keeley, J.) (citations omitted); *Giarratano v. Johnson*, 521 F.3d 298, 304 n. 5 (4th Cir. 2008).

The gist of the plaintiff's case is the fact that he, a Seventh Day Adventist, was

compelled to use two vacation days in order to avoid having to work on two Sabbath days.[1] Essentially then, the plaintiff's issue is not whether his employer failed to accommodate his religious preference, but rather that he is dissatisfied with the accommodation that was made.

In *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307 (4th Cir. 2008), the Fourth Circuit held:

> Title VII makes it an "unlawful employment practice for an employer ... to discharge any individual ... because of such individual's ... religion." 42 U.S.C. § 2000e–2(a)(1) (2000). "[S]omewhat awkwardly," Congress "illuminate[d] the meaning of religious discrimination" by how it defined "religion" for the purposes of Title VII. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 63 n. 1 (1986). Specifically, § 2000e(j) provides that "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Thus, an employer has a "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *Trans*

---

[1] "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); "The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 951, 962-63 (4th Cir. 1996).

*World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977).

In religious accommodation cases, we employ a burden shifting scheme akin to the one articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff must first establish a prima facie claim by showing that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996) (quoting *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985), *aff'd on other grounds*, 479 U.S. 60 (1986)).

"If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not [reasonably] accommodate the plaintiff's religious needs without undue hardship." *Chalmers*, 101 F.3d at 1019; see also 42 U.S.C. § 2000e(j). This is a two-prong inquiry. To satisfy its burden, the employer must demonstrate either (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances or (2) that such accommodation was not provided because it would have caused an undue hardship—that is, it would have "result[ed] in 'more than a de minimis cost' to the employer." *Philbrook*, 479 U.S. at 67 (quoting *Hardison*, 432 U.S. at 84).

515 F.3d at 312.

If the employer has provided a reasonable accommodation, then the Court need not examine whether alternative accommodations not offered would have resulted in undue hardship.

The Court in the *Firestone Fibers* case went on to state:

> Appellants contend, as they did before the district court, that an employer provides a reasonable accommodation only when it "eliminate[s] the conflict between the religious practice and the work requirement." . . . Put another way, appellants argue that Title VII requires an employer, absent undue hardship, to totally accommodate an employee's religious observances. This would essentially limit the Title VII analysis to whether an employer's failure to provide total accommodation was based on undue hardship. For the reasons that follow, we cannot accept appellants' interpretation of § 2000e(j) and hold that "reasonably accommodate" means what it says: reasonably accommodate.

515 F.3d at 313.

In this case, the issue is whether requiring the plaintiff to use two vacation days to satisfy his religious principles is a reasonable accommodation. In *Miller v. Drennon*, 966 F.2d 1443 (4th Cir. 1992) (unpublished), the Fourth Circuit noted that the "Tenth Circuit held that allowing firefighters to avoid objectionable shift assignments by taking vacation leave or unpaid leave, or by trading shifts voluntarily, was a reasonable accommodation, even though the fire department imposed certain restrictions on the firefighters' ability to take time off. *United States v. City of Albuquerque*, 545 F.2d 110 (10th Cir. 1976), *cert.*

*denied*, 433 U.S. 909 (1977)." The Court then found that Miller was allowed to apply for personal leave to avoid an objectionable assignment and held that "[A]s in *Albuquerque*, reasonable accommodation did not fail simply because Miller's ability to avoid an objectionable assignment was not absolute, but was dependent on the willingness of other employees to swap and subject to certain minimum staffing requirements." 966 F.2d at *3.

The Tenth Circuit also observed that "[a] fireman could use up a portion of his leave with pay, if he be so inclined. Or he could simply take leave without pay. When an employee for personal reasons simply prefers not to work on a given day, it is not too much to suggest that he receive no pay for the shift he does not work." 545 F.2d at 114.

Other Courts have made it clear that requiring an employee to use vacation days or take unpaid leave to accommodate their Sabbath or other holy day is a reasonable accommodation as a matter of law. *See, e.g.*, ***Getz v. Com. of Pa., Dep't of Public Welfare***, 802 F.2d 72 (3d Cir. 1986); ***Lee v. ABF Freight Sys.***, 22 F.3d 1019 (10th Cir. 1994); ***Guy v. MTA New York City Transit***, 2012 WL 4472112 (E.D. N.Y. Aug. 6, 2012), *R & R adopted*, 2012 WL 4472098 (E.D. N.Y. Sept. 26, 2012).

In *Getz*, the Third Circuit noted that the plaintiff "has not had to choose between sacrificing a portion of her salary and her religious beliefs nor has she had to choose between taking a religious holiday and being penalized by her employer for missing a workday. On the contrary, plaintiff has been able to take paid leave to observe all of her religious holidays . . . ." 802 F.2d at 73.

This Court finds, as a matter of law, that allowing the plaintiff to take two days off by using accrued vacation was a reasonable accommodation of his religious beliefs. For

this reason, as well as the lateness of the filing of the charge, this case is **DISMISSED WITH PREJUDICE**. The Defendant's Motion to Dismiss **[Doc. 9]** is **GRANTED**. The Clerk is **DIRECTED** to **STRIKE** this matter from the active docket of this Court and to enter judgement in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein and to mail a copy to the *pro se* plaintiff.

**DATED:** February 27, 2020.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE